2015 COA 181

**Akeem A. MAKEEN, Plaintiff–Appellant,**

**v.**

**George E. HAILEY, Defendant–Appellee.**

**Court of Appeals No. 14CA1781**

Colorado Court of Appeals,
Div. I.

Announced December 31, 2015

Rehearing Denied February 4, 2016

338

Akeem A. Makeen, Pro Se.

The Law Office of Horace A. Lowe LLC, Horace A. Lowe, Aurora, Colorado, for Defendant–Appellee.

Opinion by JUDGE HARRIS

¶1 Akeem A. Makeen sued his father, George E. Hailey, over a series of disputed real estate transactions. Mr. Hailey filed various counterclaims, alleging breach of fiduciary duty, fraud, spurious liens, and intentional infliction of emotional distress. After a bench trial, the court found in favor of Mr. Hailey on all claims, awarding damages, costs, and fees.

¶2 On appeal, Mr. Makeen contends that Mr. Hailey's first and second counterclaims for breach of fiduciary duty and fraud were not timely filed and should have been dismissed. He also contends that the trial court committed reversible error in its rulings on various procedural issues. We reject each of Mr. Makeen's contentions and affirm the judgment.

## I. Background

¶3 Mr. Makeen and Mr. Hailey purchased real property in Denver (Utopia Property) as joint tenants. Mr. Makeen alleged that he had an oral agreement with his father pursuant to which he would manage the property while his father was alive, and upon his death Mr. Makeen would become the sole owner. According to Mr. Makeen, Mr. Hailey also promised to give him seven other properties upon Mr. Hailey's death. Mr. Hailey, however, alleged that he never promised Mr. Makeen any property interests, and that Mr. Makeen fraudulently purchased the Utopia Property in both of their names, even though he had agreed to act as Mr. Hailey's agent and to buy the property only in Mr. Hailey's name.

¶4 In October 2012, Mr. Makeen sued Mr. Hailey for fraudulent conveyance, breach of contract, and other claims relating to these real estate transactions. He also asserted claims of slander and defamation, alleging

that Mr. Hailey had falsely informed various banks and agencies that Mr. Makeen had improperly used Mr. Hailey's credit information.

¶ 5 Although this case was governed by Chief Justice Directive 11–02, Civil Access Pilot Program (reenacted & amended Nov. 2015) (CAPP)[1], which was intended to enhance judicial efficiency, the case proceeded slowly due to multiple and repeated discovery disputes and four sets of amended pleadings. Both parties initially appeared pro se, but Mr. Hailey engaged legal representation shortly before the case was originally scheduled for trial.

¶ 6 After the original trial date was postponed, Mr. Makeen filed his fourth amended complaint in September 2013. On November 15, 2013, Mr. Hailey responded with his fourth amended answer, which was his first pleading filed with the assistance of counsel. In this answer, Mr. Hailey asserted counterclaims for the first time in the litigation. Mr. Makeen filed a motion to dismiss the first and second counterclaims as untimely, which the court denied. To avoid another continuance, the court severed the counterclaims and proceeded to trial on Mr. Makeen's claims in February 2014, with a separate trial on the counterclaims a few months later.

¶ 7 After both trials, the court found in favor of Mr. Hailey on all claims and counterclaims.[2] The case turned largely on issues of credibility, and the court concluded that it simply did not believe Mr. Makeen's version of events; indeed, the trial court found Mr. Makeen "to be one of the most [i]ncredible, unbelievable witnesses I have listened to in my going on 15 years on the bench." He

characterized Mr. Makeen as a "bully" and not "an honest litigant." The court awarded Mr. Hailey $7100 in damages, plus costs and attorney fees, and entered an order extinguishing Mr. Makeen's interest in the Utopia Property.

## II. Counterclaims

¶ 8 Mr. Makeen contends that the trial court erred in finding Mr. Hailey's counterclaims for breach of fiduciary duty and fraud timely.[3] Although the trial court agreed that the claims were time barred under the substantive statutes of limitations, the court found that section 13–80–109, C.R.S.2015, revived the stale counterclaims.[4]

¶ 9 According to section 13–80–109, "[a] counterclaim or setoff arising out of the transaction or occurrence which is the subject matter of the opposing party's claim shall be commenced within one year after service of the complaint by the opposing party and not thereafter." Thus, this section permits otherwise time-barred claims to be filed as counterclaims, if compulsory, within one year of service of the complaint that includes the claim that gives rise to the counterclaims. *See E–21 Eng'g, Inc. v. Steve Stock & Assocs., Inc.*, 252 P.3d 36, 40 (Colo. App.2010).

¶ 10 The trial court determined that Mr. Hailey's counterclaims were timely because they were filed within one year of Mr. Makeen's last-filed complaint. Mr. Makeen contends, however, that he pleaded the claims giving rise to Mr. Hailey's counterclaims in his initial complaint, not in his last-

---

1. The Civil Access Pilot Program no longer applies to newly filed cases. Cases filed on or after July 1, 2015 are governed by the Colorado Rules of Civil Procedure. *See* Chief Justice Directive 11–02, Civil Access Pilot Program (reenacted & amended Nov. 2015) (CAPP).

2. The court denied Mr. Hailey's request for injunctive relief barring Mr. Makeen from filing any further lawsuits against Mr. Hailey because it believed this was outside of its judicial powers.

3. Mr. Hailey asserted additional counterclaims, but they arose from claims filed later in the case, and the timeliness of those additional counterclaims is not disputed.

4. Mr. Hailey contends that Mr. Makeen did not properly preserve this argument for appeal. However, as Mr. Hailey recognizes in his answer brief, Mr. Makeen moved to dismiss the counterclaims for fraud and breach of fiduciary duty for timeliness, which the court denied. Thus, the issue is preserved. *See Battle N., LLC v. Sensible Hous. Co.*, 2015 COA 83, ¶ 13, 370 P.3d 238 (finding that where an issue was brought to the trial court's attention and the court ruled on it, the issue was preserved for appeal); *see also SMLL, L.L.C. v. Peak Nat'l Bank*, 111 P.3d 563, 564–65 (Colo.App.2005) (holding that a statute of limitations defense may be raised in a motion to dismiss where the complaint shows that claims were brought outside the limitations period).

filed complaint, and therefore the revival statute's one-year limitations period was triggered upon service of his initial complaint, in October 2012. Because Mr. Hailey did not file his counterclaims until November 2013, over one year later, Mr. Makeen argues that the counterclaims were time barred. For his part, Mr. Hailey acknowledges that his counterclaims arose out of claims that Mr. Makeen pleaded in his initial complaint. But he says that his counterclaims are nonetheless timely because his amended answer, which included his counterclaims, relates back, under C.R.C.P. 15(c), to his initial answer, which was filed well within the limitations period.

¶ 11 We review de novo a trial court's application of the statute of limitations where, as here, the relevant facts are undisputed. *Sterenbuch v. Goss,* 266 P.3d 428, 432 (Colo.App.2011).

¶ 12 We disagree with the trial court's conclusion that the revival statute's one-year limitations period runs from the date of the last-filed complaint. As the trial court determined, and the parties do not dispute, Mr. Hailey's counterclaims were compulsory because they arose out of Mr. Makeen's claims regarding the Utopia Property—claims that were pleaded in Mr. Makeen's initial complaint. C.R.C.P. 13(a) ("A pleading shall state as a counterclaim any claim which at the time of filing the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim...."). Under the plain language of the revival statute, the period to bring a stale counterclaim runs from the date of service of the first complaint that contains the claims giving rise to the compulsory counterclaims. In this case, those claims appeared in Mr. Makeen's initial complaint and, therefore, the one-year time period was triggered when Mr. Makeen served Mr. Hailey with that complaint.

¶ 13 Mr. Hailey did not file the compulsory counterclaims until November 2013, when he filed an amended answer to Mr. Makeen's fourth amended complaint. We conclude, however, that the counterclaims were timely because Mr. Hailey's amended answer and counterclaims related back to his initial answer, which was filed within the revival statute's one-year limitations period.

¶ 14 C.R.C.P. 15(c) provides, in relevant part: "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." Thus, an amended pleading that meets the requirements of Rule 15(c) is treated as if it were filed on the date of the original pleading.

¶ 15 The purpose of the relation back doctrine is to "ease procedural problems when the statute of limitations poses a technical, not substantive, bar to maintaining suit." *Lavarato v. Branney,* 210 P.3d 485, 489 (Colo.App.2009). Indeed, "[r]elation back is intimately connected with the policy of the statute of limitations," as the doctrine is designed to ameliorate the effect of such limitations periods. *Beaver Creek Prop. Owners Ass'n v. Bachelor Gulch Metro. Dist.,* 271 P.3d 578, 583 (Colo.App.2011) (citation omitted).

¶ 16 Although there is no Colorado case law addressing whether a previously omitted counterclaim relates back to the original answer, "[b]ecause the Colorado rule and Federal Rules of Civil Procedure 15(c)(1)(B) are substantially similar as relevant here, case law interpreting the federal rule is persuasive in our analysis of C.R.C.P. 15(c)." *Kelso v. Rickenbaugh Cadillac Co.,* 262 P.3d 1001, 1003 (Colo.App.2011). Numerous federal courts have held that an amended answer adding a counterclaim relates back to the original answer, even when no counterclaim was originally asserted, if the counterclaim arose out of the same transaction alleged in the earlier-filed answer. *See, e.g., Banco Para El Comercio Exterior de Cuba v. First Nat'l City Bank,* 744 F.2d 237, 243 (2d Cir. 1984); *Perfect Plastics Indus., Inc. v. Cars & Concepts, Inc.,* 758 F.Supp. 1080, 1083 (W.D.Pa.1991); *Local 1316, Int'l Bhd. of Elec. Workers v. Superior Contractors & Assocs., Inc.,* 618 F.Supp. 488, 489 (N.D.Ga.

1985); *Milam v. Massey–Ferguson, Inc.*, 580 F.Supp. 879, 881 (S.D.Miss.1984).

¶ 17 Leading commentators also agree that the counterclaim should relate back to the original answer. *See* 6 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1496.1 (3d ed.1998); 3 James Wm. Moore et al., *Moore's Federal Practice* § 13.93, at 13–78 (3d ed. 2015) ("[A]n amendment to add a compulsory counterclaim arising out of the same transaction alleged in a timely and previously filed answer relates back to the filing of the answer and is not time barred."). To rule otherwise would be inconsistent because the relation back doctrine would allow a plaintiff to assert an otherwise time-barred claim through an amended complaint "yet deny defendant an analogous opportunity." 6 Wright & Miller at § 1496.1.

¶ 18 Relying on *Full Draw Productions v. Easton Sports, Inc.*, 85 F.Supp.2d 1001, 1009 (D.Colo.2000), Mr. Makeen argues that the counterclaims are untimely under the revival statute because they were not actually filed within one year of the original complaint. *Full Draw*, however, is inapposite. The question presented in *Full Draw* was whether the counterclaim revival statute's limitation period was tolled during the pendency of a motion to dismiss. The federal district court determined that it was not, and because the defendant's initial answer and counterclaims were filed outside of the one-year limitations period, the counterclaims were untimely. *Id.* The defendant in *Full Draw* had only filed one answer, and thus the relation back doctrine was not at issue. This outcome has no bearing on whether Mr. Hailey's later-filed counterclaims relate back to his original answer, rendering his counterclaims timely.

¶ 19 Having established that an omitted counterclaim can relate back to the original answer if it meets the requirements of Rule 15(c), we turn to whether Mr. Hailey's first and second counterclaims relate back to his original answer. We conclude that they do.

¶ 20 The amended answer and counterclaims meet the requirements of Rule 15(c) because they "arose out of the conduct, transaction, or occurrence" described in the initial answer. The initial answer provided more than mere denials of Mr. Makeen's claims; rather, Mr. Hailey affirmatively asserted his version of events, claiming that he sent Mr. Makeen to bid on the Utopia Property on his behalf, but instead, Mr. Makeen purchased it in both of their names. The amended answer and counterclaims arose out of this transaction, as Mr. Hailey asserted claims for breach of duties as a limited agent and common law fraud related to the purchase of the Utopia Property. Accordingly, the amended answer and counterclaims related back to Mr. Hailey's initial answer.

¶ 21 Although the trial court found Mr. Hailey's counterclaims timely because they were filed within a year of the last-filed complaint, we can affirm on any grounds supported by the record. *Rush Creek Sols., Inc. v. Ute Mountain Ute Tribe*, 107 P.3d 402, 406 (Colo.App.2004). We conclude that Mr. Hailey's counterclaims relate back to his original answer, and therefore, the counterclaims were timely under section 13–80–109.

### III. Other Contentions

#### A. Discovery Sanctions

¶ 22 Mr. Makeen contends that the trial court erred in failing to sanction Mr. Hailey for repeated discovery violations. He argues that, under the CAPP rules, sanctions are mandatory for discovery violations, and thus the court abused its discretion when it failed to sanction Mr. Hailey. We disagree.

¶ 23 Throughout the course of this contentious litigation, the parties had multiple discovery disputes, resulting in numerous hearings before the court. During some of the hearings, it became clear that Mr. Hailey either did not understand Mr. Makeen's discovery requests or thought he had already complied. On other occasions, Mr. Hailey averred that he did not have the requested information or that it was irrelevant, and Mr. Makeen sought to compel production.

¶ 24 Throughout discovery, Mr. Makeen sought some sort of sanction for Mr. Hailey's alleged discovery violations, including default, summary judgment, and contempt. The court, however, concluded that Mr. Hai-

ley had made substantially all of the required disclosures and, even if there had been intermittent noncompliance with some of the CAPP· discovery rules, the noncompliance was substantially justified and harmless.

¶ 25 We review the trial court's decision whether to impose discovery sanctions for an abuse of discretion, which occurs when its decision is manifestly arbitrary, unreasonable, or unfair, *Winkler v. Shaffer*, 2015 COA 63, ¶ 7, 356 P.3d 1020, or when its decision is based on an erroneous understanding or application of the law. *Salazar v. Kubic*, 2015 COA 148, ¶ 6, 370 P.3d 342. A trial court does not abuse its discretion in declining to impose sanctions if the discovery violation was harmless. *Shaffer*, ¶ 7. While trial courts have flexibility in choosing an appropriate sanction, litigation-ending sanctions are disfavored, and "litigation should be determined on the merits and not on formulistic application of the rules." *Pinkstaff v. Black & Decker (U.S.) Inc.*, 211 P.3d 698, 703 (Colo. 2009).

¶ 26 Mr. Makeen cites CAPP Rule 3.7 (PPR) for his argument that, as a CAPP case, sanctions were mandatory. Although PPR 3.7 requires mandatory sanctions for a failure to timely and completely disclose, it applies only to initial disclosures and not the discovery requests at issue here. *See* PPR 3—Pleadings and Initial Disclosures. Sanctions for failures to disclose unrelated to initial disclosures are governed by the discretionary provisions of PPR ·11. *See* PPR 11.1 ("In addition to the sanctions set forth in PPR 3.7, the court *may* impose sanctions as appropriate for any failure to timely or completely comply with these PPR's.") (emphasis added).

¶ 27 Further, sanctions under PPR 3.7 are not required if the court determines that the failure to disclose was either harmless or justified under the circumstances. The court found that Mr. Hailey did not violate the rules, but that even if he had, the violations were both substantially justified and harmless. Thus, the court did not abuse its discretion in refusing to enter sanctions against Mr. Hailey.

## B. Close of Discovery

¶ 28 Mr. Makeen also contends that the trial court erred in prematurely cutting off discovery at the final discovery dispute hearing in October 2013. We disagree.

¶ 29 Rulings limiting discovery are within the discretion of the trial court and will not be disturbed on appeal absent a showing of an abuse of that discretion. *Silva v. Wilcox*, 223· P.3d 127, 136 (Colo.App.2009); *see also Leaf v. Beihoffer*, 2014 COA 117, ¶ 47, 338 P.3d 1136 ("A court has discretion to impose a reasonable discovery deadline in managing its docket.").

¶ 30 Mr. Makeen had nearly eleven months to conduct discovery, and the trial court acted well within its discretion in enforcing reasonable trial management deadlines, particularly because this case involved several amended pleadings and was mired in discovery disputes. *Silva*, 223 P.3d at 137; *see also People v. Jasper*, 17 P.3d 807, 812 (Colo. 2001) ("[T]he setting of deadlines for pretrial matters constitutes an integral part of a trial court's case management authority.").

¶ 31 Moreover, Mr. Makeen did not establish prejudice resulting from the termination of discovery. Mr. Makeen says the discovery cutoff prevented him from obtaining evidence related to his slander and defamation claims. But the trial court determined that the allegedly slanderous and defamatory statements were substantially true, providing an absolute defense on these claims. *Fry v. Lee*, 2013 COA 100, ¶ 22, —— P.3d ——. Thus, any undiscovered evidence related to these claims could not have prejudiced Mr. Makeen. *Keybank, Nat'l Ass'n v. Mascarenas*, 17 P.3d 209, 215–16 (Colo.App.2000) (finding no prejudice in denying discovery when requested evidence would not have precluded summary judgment).

¶ 32 Mr. Makeen also contends that early termination of discovery prevented him from learning that Mr. Hailey no longer owned two of the properties he had promised to convey to Mr. Makeen. But the trial court determined that there was no such promise, and thus ownership of the properties was irrelevant.

¶ 33 Although Mr. Makeen was afforded little to no defensive discovery on the counterclaims, which were filed after the discovery cutoff, Mr. Makeen does not even attempt to identify any resulting prejudice. Without some articulation of how the discovery limitation prejudiced Mr. Makeen, we cannot determine that the trial court abused its discretion in enforcing its previously imposed discovery deadline. *See Tallitsch v. Child Support Servs., Inc.*, 926 P.2d 143, 149 (Colo.App.1996) (limiting discovery was not an abuse of discretion when the defendant failed to identify any resulting prejudice); *Ammons v. Am. Family Mut. Ins. Co.*, 897 P.2d 860, 864 (Colo.App.1995) (finding no abuse of discretion in denying request for additional discovery when party did not identify what additional discovery it would have sought or how the discovery would have advanced its claim).

¶ 34 Further, with the exception of the claim for intentional infliction of emotional distress, Mr. Hailey's other counterclaims—for breach of duties as a limited agent, common law fraud, spurious liens, slander of title, and injunctive relief—were all intimately related to Mr. Makeen's affirmative claims. All of these counterclaims were premised on Mr. Hailey's claim that he did not enter into an agreement with Mr. Makeen about the properties at issue, and that Mr. Makeen had no legal right to them. Thus, Mr. Makeen had ample opportunity to conduct discovery on these claims, as the same evidence used to prove his claims would also disprove Mr. Hailey's.

¶ 35 Discovery was unnecessary for the intentional infliction of emotional distress counterclaim as well, but for a different reason. The trial court evaluated the outrageousness of Mr. Makeen's conduct and the severity of Mr. Hailey's emotional distress based on what it observed during the litigation. For example, in finding Mr. Makeen's conduct extreme and outrageous, the court cited a settlement letter sent by Mr. Makeen stating that he did not care about the outcome of the case, but he intended to bankrupt Mr. Hailey in the process. And in finding that Mr. Hailey suffered from extreme emotional distress, the court was persuaded by Mr. Hailey's testimony that this lawsuit was worse than the passing of his wife. Given the basis of the court's decision, it is unclear what discovery Mr. Makeen would have sought, or how it would have helped him.

¶ 36 Moreover, although Mr. Hailey prevailed on this claim, the court did not award any compensatory damages. Rather, the court entered a "symbolic award" of $100.[5] Because compensatory damages were not awarded, Mr. Makeen was not prejudiced by the lack of discovery.

## C. Incompetency/Medical Condition

¶ 37 Mr. Makeen contends that he was incompetent during the trial because he suffered from epilepsy and diabetes, and that the court erred in allowing him to proceed without determining his competency to represent himself. Mr. Makeen did not notify the court of any concerns about his own competency. Instead, relying on principles of criminal law, Mr. Makeen claims that he put the court on notice by filing a motion seeking advisory counsel, and that based on this motion, the court should have undertaken an independent investigation into Mr. Makeen's competency. We are not persuaded.

¶ 38 A trial court is obligated to administer justice, control the decorum of the courtroom, and make sure that cases are decided on appropriate grounds. *People v. Finney*, 2012 COA 38, ¶ 64, 328 P.3d 205, *aff'd*, 2014 CO 38, 325 P.3d 1044. To achieve these ends, courts have broad discretion to manage trials, and we review these trial management decisions for an abuse of discretion. *Maloney v. Brassfield*, 251 P.3d 1097, 1102 (Colo.App.2010).

¶ 39 One week before trial, Mr. Makeen filed a motion explaining that he was epileptic and diabetic and requesting permission to have Leta Holden serve as advisory counsel so that she could take over if Mr. Makeen had a seizure and was rendered unable to

---

**5.** Neither party challenged this award, and thus we do not review its propriety on appeal.

continue with the trial.[6] This request for advisory counsel put the court on notice of a potential medical condition, not the possibility that Mr. Makeen was incompetent to proceed to trial.

¶ 40 After learning of Mr. Makeen's medical condition, the court gave permission for Ms. Holden to enter a limited appearance to serve as Mr. Makeen's counsel at trial. Alternatively, the court advised Mr. Makeen that, if he wished to continue pro se, Ms. Holden could monitor the trial from the courtroom and he could consult with her during breaks, but that she could not sit at counsel table unless she entered her appearance. The court assured Mr. Makeen that if he elected to proceed pro se, the court would implement a contingency plan in the event Mr. Makeen had a seizure. Mr. Makeen elected to proceed pro se.

¶ 41 While a self-represented criminal defendant may be permitted to have advisory counsel in some circumstances, *Downey v. People*, 25 P.3d 1200, 1203 (Colo.2001), we are aware of no authority, and Mr. Makeen has cited none, that would allow a self-represented civil plaintiff to have the assistance of advisory counsel. Therefore, the court did not abuse its discretion in denying this motion. *See Gibson v. Campbell*, No. Civ. A. 09–00983–WYD–KLM, 2009 WL 4810693, at *2 (D.Colo. Dec. 11, 2009) (unpublished order) ("Plaintiff chose to bring this civil action voluntarily knowing the limitations he would face," and his alleged disability does not constitute special circumstances warranting assignment of counsel, particularly where the "quantity of filings made by Plaintiff belie[s]

his contention that he is unable to pursue his claims without assistance of counsel.").

¶ 42 Mr. Makeen further asserts that he in fact suffered seizures and lost consciousness during the trial, which affected the court's assessment of his credibility, and that the court violated the Americans with Disabilities Act (ADA) by refusing to grant him a reasonable accommodation for his seizure disorder.

¶ 43 We do not consider these claims, however, because Mr. Makeen failed to timely raise these issues in the trial court. An issue is not preserved for appeal when it "was asserted only after all evidence and argument were concluded." *Dahl v. Young*, 862 P.2d 969, 972 (Colo.App.1993). Mr. Makeen failed to inform the court until months after the trial that he had had seizures during the trial, and the record does not reflect the occurrence of any medical emergency. And, as Mr. Makeen concedes, he failed to request any ADA accommodation until well after the trial, in preparation for a supersedeas bond hearing.[7] Thus, this issue was not preserved for appellate review.

### D. Joinder

¶ 44 Mr. Makeen contends that the trial court abused its discretion when it refused to allow him to join Teresa Hailey (his sister and Mr. Hailey's daughter) as an indispensable party under C.R.C.P. 19. He argues that she was indispensable because it was actually Ms. Hailey, and not Mr. Hailey, who made the allegedly slanderous and defamatory statements, purportedly on Mr. Hailey's behalf. The court denied Mr. Mak-

6. This was not Ms. Holden's first involvement in the case. On June 6, 2013, the court continued the trial due to extraordinary circumstances, one of which included the court's "extreme concern" about Ms. Holden's role in the action, since she had not entered an appearance in the case, yet her name appeared as Mr. Makeen's attorney in his settlement offer to Mr. Hailey. And at a hearing later that summer, Ms. Holden sat at counsel table but again confirmed that she was not entering her appearance in the case. The court told Ms. Holden that she could not sit at counsel table if she had not entered her appearance and reiterated its concern about her role in the case. Ms. Holden also attended the pretrial conference, where the court informed Mr. Makeen that he could not have advisory counsel sit

with him at counsel table unless she entered her appearance as his attorney. After conferring with Ms. Holden, Mr. Makeen elected to proceed pro se. He made no mention of a medical condition or disability on any of these occasions.

7. Mr. Makeen's motion explained, for the first time, that the Colorado Department of Regulatory Agencies had previously determined that Mr. Makeen was disabled under the ADA. To accommodate his disability, Mr. Makeen requested that Ms. Holden serve as his translator for all further proceedings. He did not explain how a translator would accommodate his epilepsy or what she would be translating.

een's motion because it was filed after the case management order's deadline for the joinder of additional parties.

¶ 45 We will not overturn a trial court's determination of a joinder issue absent a showing of an abuse of discretion. *Hicks v. Joondeph*, 232 P.3d 248, 252 (Colo. App.2009). Whether a party is indispensable under Rule 19 turns on the facts of each case. *Dunne v. Shenandoah Homeowners Ass'n, Inc.*, 12 P.3d 340, 344 (Colo.App.2000).

¶ 46 C.R.C.P. 19(a) provides that a party must be joined if feasible when "[i]n his absence complete relief cannot be accorded among those already parties" or the absent party "claims an interest relating to the subject of the action" and his absence may "impair or impede his ability to protect that interest" or leave the current parties "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." *See also Woodco v. Lindahl*, 152 Colo. 49, 54–55, 380 P.2d 234, 238 (1963) (A party is indispensable if without the party, "no decree can be entered in the case which will do justice between the parties actually before the court without injuriously affecting the right of such absent person.") (citation omitted).

¶ 47 Despite claiming that Ms. Hailey was indispensable to the lawsuit, Mr. Makeen has not identified any potential injury to Ms. Hailey due to her absence. None of Ms. Hailey's rights are implicated in this action. Rather, Mr. Makeen's claim is simply that he belatedly discovered that his slander and defamation claims should properly have been brought against Ms. Hailey and not Mr. Hailey. A party is not indispensable to litigation simply because the plaintiff has a viable legal theory only against that party. *Cf. Lavarato*, 210 P.3d at 489 ("If a plaintiff later discovers another person may be liable, he may not avoid the consequences of an earlier oversight. . . .").

¶ 48 Moreover, even if we assume that Ms. Hailey was an indispensable party, any error in refusing to allow Mr. Makeen to join her as a defendant was surely harmless. As Mr. Makeen admits, Ms. Hailey was a necessary party only to the slander and defa-

mation claims. As discussed above, however, the trial court determined that the allegedly slanderous and defamatory statements were substantially true, which provided an absolute defense to slander or defamation whether the claims were brought against Mr. Hailey or Ms. Hailey. *Fry*, ¶ 22. Indeed, Ms. Hailey's status was irrelevant in light of the court's determination that Mr. Makeen was "absolutely not convincing" on this issue. Regardless of whether Ms. Hailey was joined as a party, Mr. Makeen would have lost on his slander and defamation claims. Therefore, any error in failing to join Ms. Hailey was harmless. *See Leaf*, ¶¶ 38–40.

¶ 49 Mr. Makeen further claims that Ms. Hailey was an indispensable party to Mr. Hailey's counterclaims because she was a joint owner of some of the properties at issue. However, Mr. Makeen points to no evidence, and provides no record citations, demonstrating that Ms. Hailey jointly owned any of the properties. Mr. Makeen relies only on the conclusory statement in Mr. Hailey's counterclaim that Mr. Makeen "had a present scheme to take property and money from the Defendant as well as from Teresa Hailey, the Plaintiff's sister." This statement is insufficient to demonstrate that Ms. Hailey had any interest in any of the properties at issue in this case such that she was an indispensable party, and we will not comb the record in search of additional facts to support this claim. *Cikraji v. Snowberger*, 2015 COA 66, ¶ 10, ——— P.3d ———; *Brighton Sch. Dist. 27J v. Transamerica Premier Ins. Co.*, 923 P.2d 328, 335 (Colo.App.1996) ("[I]t is not the duty of the reviewing court to search the record for evidence to support bald assertions."), *aff'd*, 940 P.2d 348 (Colo.1997). Accordingly, we discern no reversible error in the court's refusal to allow the requested joinder.

### E. Tulare Property

¶ 50 Mr. Makeen contends that the trial court failed to enter judgment on his claims relating to a property located in southeast Denver (Tulare Property), and therefore, the case must be remanded so the court can enter judgment. We disagree.

¶ 51 Mr. Makeen's only claims relating to the Tulare Property were for breach of contract and promissory estoppel. The court rejected both claims, finding that no contract or promise existed between Mr. Makeen and Mr. Hailey regarding any of the properties at issue in the case. Although the court did not make a specific ruling regarding the Tulare Property, its findings applied to all of the properties at issue, and thus the court necessarily found in favor of Mr. Hailey on both claims related to the Tulare Property. Therefore, the trial court entered judgment on the claims pertaining to the Tulare Property, and a remand is unnecessary.

### F. Fair Trial

¶ 52 Finally, Mr. Makeen contends that the combination of the discovery violations, the premature termination of discovery, and the court's rulings on his incompetency and disability amount to a violation of his constitutional rights, which prevented him from receiving a fair trial and deprived the court of jurisdiction. Because we have rejected all of his contentions of error individually, we reject Mr. Makeen's argument that, in combination, the errors deprived him of his right to a fair trial. Likewise, even if we assume that a trial court's erroneous rulings could somehow affect its jurisdiction over the subject matter or parties, we need not address this argument as we have concluded that the trial court did not err.

### IV. Attorney Fees

¶ 53 Mr. Hailey requests attorney fees and costs pursuant to C.A.R. 38(b) for responding to these claims on appeal. Under C.A.R. 38(b), we may award damages, including attorney fees and single or double costs, against a party for prosecuting a frivolous appeal. "An appeal is frivolous if the proponent can present no rational argument based on the evidence and law or the appeal is prosecuted for the sole purpose of harassment or delay." *Mitchell v. Ryder*, 104 P.3d 316, 323 (Colo.App.2004).

¶ 54 Many, though not all, of Mr. Makeen's claims on appeal are patently frivolous. There is no rational argument for Mr. Makeen's claim that the trial court should have entered discovery sanctions when the court expressly found no discovery violation, and that any violations were justified and harmless. Nor is there a rational argument that would support Mr. Makeen's claims about his disability or alleged incompetency when he presented no evidence to support this claim and failed to request any assistance until months after trial. Regarding his joinder and Tulare Property claims, Mr. Makeen presented no factual or record support for his position on appeal. Therefore, we conclude that the appeal of these issues is frivolous and award Mr. Hailey attorney fees and costs related to the defense of these claims on appeal. We determine, however, that Mr. Makeen's appeal of the judgment on the counterclaims and the order terminating discovery has an adequate basis in law and evidence and is thus not frivolous. *See Smith v. Kinningham*, 2013 COA 103, ¶ 37, 328 P.3d 258.

### V. Conclusion

¶ 55 The judgment is affirmed, and the case is remanded to the trial court for an assessment of costs and attorney fees in favor of Mr. Hailey as set forth in this opinion. *See* C.A.R. 39.5.

JUDGE TAUBMAN and JUDGE J. JONES concur.